## Philadelphia Saving Fund Society v. Belkin et ux.

*Charles J. Biddle,* for plaintiff.
*Samuel Kravitz,* for defendant.
*Hepburn & Norris,* for garnishee.

ALESSANDRONI, J., June 19, 1940.—A judgment was confessed on March 7, 1940, by plaintiff on a mortgage bond containing a warrant of attorney executed by defendants. The bond and warrant, dated July 24, 1924, was in the total sum of $7,000, conditioned for the payment of $3,500 with interest, costs, and collection fees. On March 9, 1940, damages were assessed at $6,143.39 and an attachment execution was issued on behalf of plaintiff against defendants in which First National Bank of Philadelphia was summoned as garnishee. Thereafter defendants filed this petition to open the judgment and set aside the attachment execution, all proceedings being

stayed in the interim. The petition avers that on January 23, 1931, defendants filed their petition and schedules in voluntary bankruptcy in the United States District Court for the Eastern District of Pennsylvania, and on the same date were adjudicated bankrupts. An offer of composition was made by defendants to their creditors and the matter was referred to a referee. On March 16, 1931, after proper notices and a hearing, an order confirming the composition was entered directing distribution thereon, which was made. No distribution, however, of any kind was made to plaintiff. It is further averred that Philadelphia Saving Fund Society was listed in the schedules filed in the bankruptcy as a secured creditor, holding a first mortgage together with a bond thereon in the sum of $3,500 covering premises 707 West Oxford Street, Philadelphia. No proof of claim was ever filed in the bankruptcy proceedings by plaintiff, nor did it participate in any manner in the proceedings. Subsequent to the confirmation plaintiff instituted foreclosure proceedings, and a sheriff's deed was delivered to plaintiff, dated August 10, 1931. It is averred that at the time of the foreclosure the property was worth the full value of plaintiff's mortgage, although it was sold to the attorney on the writ for the sum of $50. No further action was taken by plaintiffs until March 7, 1940, when judgment was entered on the bond accompanying the mortgage.

It is defendants' contention the liability on the bond was a provable claim in bankruptcy and was, therefore, discharged by the composition.

The answer of plaintiff avers that the offer of composition did not apply to secured creditors or to plaintiff, but related solely to the claims of unsecured creditors. It is further averred that, at the time of the foreclosure proceedings, the indebtedness of defendants to plaintiff was approximately $4,000, whereas the actual market value of the property was $3,100.

Under new matter plaintiff set forth a defense in the nature of a demurrer, in which it is contended that the

composition accepted and confirmed did not prevent a secured creditor from subsequently recovering the amount due under its contract for the deficiency resulting from a sale of the pledged asset, at least to the extent of the percentage allowed in the composition proceedings, which in this case amounted to 20 percent. It is further stated that the amount of the deficiency is determined by the amount received at the foreclosure sale.

The question involved, which is unusual in its character, is whether a consummated composition in bankruptcy proceedings affects a secured creditor who takes no part in the proceedings so as to prevent him, following the liquidation of the security, from proceeding against the bankrupt for the resulting deficiency.

The decisions in the Federal courts indicate that a composition proceeding does not affect the right of a secured creditor to recover subsequently the amount of his deficiency resulting from a foreclosure of the security to the extent of the percentage offer in the composition proceedings. One of the earliest cases is Cavanna v. Bassett, 3 Fed. 215. A voluntary petition in bankruptcy was filed by two partners on October 23, 1877. The schedules filed indicated the existence of a secured claim. A composition was accepted by the creditors on November 7, 1877, and confirmed by the court. On December 11, 1877, the creditor filed a bill to foreclose, and a decree of foreclosure was entered on April 1, 1878, pursuant to which the premises were sold with a resulting deficiency. When execution was issued on the deficiency judgment, the debtor applied to the court to have the execution and the deficiency judgment set aside on the theory that the composition proceedings discharged all liability. The debtor contended that the creditor, in failing to surrender the security or obtain a valuation thereof and in failing to file a proof of claim, relied entirely upon the security for payment. In answering the query, what was the effect of composition upon liability of the debtor for the deficiency, the court stated:

"I think the question must be answered in the negative. Complainant had a right to hold on to her security, and as a secured creditor she could not properly participate in the composition proceedings. She could not be compelled to surrender her security, and come in and prove her claim; nor was it incumbent on her to have her security valued and then to make proof of any balance; nor should her failure to do this be taken as evidence that she intended to rely wholly for payment of her demand upon her security. The bankrupts knew, or should have known, that there was a liability that the security would not pay the indebtedness. They were chargeable with notice that such a contingency might arise, and if they desired to put complainant in position where the composition proceedings would operate upon her, they might have applied to the court for proceedings compulsory in their nature to have the security valued. Not having done so, there remained a liability that in case the security should prove inadequate complainant would have the right, as to any deficiency, to compel payment of the same to the extent of the percentage paid to unsecured creditors under the composition. . . .

"In the present aspect of the case it must be held that the composition proceedings did not operate to deprive complainant of the right, after exhausting her security and ascertaining the amount unpaid, to assert against the bankrupts a claim for such deficiency; and I think such claim may be enforced through the instrumentality of an execution issued against the property of the debtors upon the deficiency judgment. Complainant's right being limited to the collection of such a percentage of her judgment as has been paid to other creditors, upon the composition and at a subsequent stage of any proceedings that may be taken on execution to enforce payment of the same, it may be the duty of the court to provide, by suitable order, for enforcement of the execution only to the extent which has been indicated."

In the decision in the case of Paret v. Ticknor et al., 18 Fed. Cas. 1093 (no. 10711), 16 N. B. R. 315, in which the facts were almost identical, Mr. Justice Miller of the Supreme Court of the United States, sitting with Circuit Judge Dillon, stated:

"I am of opinion myself that the compromise provisions of the bankruptcy act design that every creditor shall receive the same proportion of his debt, and I am of opinion as regards the parties who shall receive; that the secured creditor is a creditor for that purpose for all that is not satisfied by his security. And I am of opinion that whenever this fact is ascertained, even after the compromise, that remainder constitutes a debt against the bankrupt, of which he shall pay the same proportion to that creditor that he has paid to the unsecured creditors."

To the same effect see Flower v. Greenebaum, 50 Fed. 190, Cohn v. Colby, 57 How. Prac. 168 (N. Y.), and In re Bestwick, 2 Ch. D. 485 (1876).

The authority of these decisions is recognized in the decision of the case of In re Harvey, 144 Fed. 901, which litigation arose in the Eastern District of Pennsylvania. The bankrupt, pursuant to an offer in composition of 20 percent, deposited an amount sufficient to pay 20 percent of all unsecured claims. The referee insisted that the debtor deposit sufficient funds to cover 20 percent of the possible deficiencies arising on the secured claims after the securities had been liquidated. The court reversed the referee and held that until the secured claims were liquidated and the deficiencies established they had no claim against the bankrupt nor any right to participate in the composition proceedings. The court further stated that in case there was a deficiency after the mortgage property had been converted the creditors were entitled to recover an amount equal to the percentage paid to other scheduled creditors.

The debtors contend that the creditor is precluded from recovering by reason of its failure to file a proof of claim

within one year after the adjudication in bankruptcy. It is also contended that it was the duty of the creditor to liquidate the security so that the amount of the claim could be ascertained. The right to participate in the bankrupt estate was dependent upon this action by the secured creditor. By failing to do so it was precluded from voting in favor of or against the terms of the composition and from securing its distributive share at that time. It was furthermore relegated to the uncertainty of future events, and was compelled to seek redress against any future estate that the debtors might acquire. Moreover, in the event that the debtors became financially responsible in the future, the creditor would not be able to recover the entire amount of the deficiency, but only that percentage which had been paid to the other creditors in composition. This was decided in the case of American Woolen Co. v. Cohen, 127 N. Y. Supp. 787, affirmed 206 N. Y. 686, in which case the creditor neither proved nor made any claim in the bankruptcy proceedings for an indebtedness secured by a mortgage.

The debtors also contend that the value of the property is not determined by the amount bid at the sheriff's sale, but that the debtors are entitled to a credit in the amount of the real value of the security, that is, that the Federal bankruptcy rule, which was adopted in Pennsylvania in the United Security Trust Company case, 321 Pa. 276, must be applied. Generally, as between the mortgagor and mortgagee, the amount realized at the sheriff's sale is conclusive as to the value of the property: White's Estate, 322 Pa. 85. In insolvency proceedings a mortgage creditor is required to set off the real value of his security before he can prove his claim for a possible deficiency and share with other creditors in the distribution of the debtors' estate. The problem in such proceedings is one between creditors inter se, since the amount of the deficiency directly affects the interests of the other creditors and the amounts they will receive. Had

the creditor sought to participate in the composition proceeding it would have been compelled to set off the real value of its securities. Those proceedings have been terminated, and at the present time the rights of other creditors are not involved. See Merrill v. Nat. Bank of Jacksonville, 173 U. S. 131, and Beaver County B. & L. Assn. v. Winowich et ux., 323 Pa. 483.

There is, however, error in the assessment of damages. The decisions hereinbefore cited clearly establish that the liability of the debtor is 20 percent of the deficiency ascertained upon liquidation, at which time the liability of the debtor matures. The creditor in assessing damages has included an interest charge based upon the entire amount of the deficiency, and now seeks to recover 20 percent of that amount, $6,143.39. It would appear that the proper assessment would restrict the interest charges to 20 percent of the ascertained deficiency. This would reduce the amount of the judgment to $1,261.36. In opening the judgment, the lien of the attachment execution should be continued in the reduced amount: Adams v. Leeds Company et al., 189 Pa. 544, 547; McIlvain & Co. v. Leeds Co. et al., 189 Pa. 638.

And now, to wit, June 19, 1940, defendants' rule is made absolute to the extent that the judgment is opened and the attachment execution is set aside in all sums in excess of $1,261.36.